## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Dontea Britton,                                    Civil No. 07-4746 (ADM/SRN)

      Plaintiff,

    v.                                         <u>REPORT AND RECOMMENDATION</u>

Michael J. Astrue, Commissioner
of Social Security,

      Defendant.

_____

    Mark G. Stephenson, Stephenson & Sutcliffe, PA, 1635 Greenview Drive Southwest, Rochester, Minnesota 55902, on behalf of Plaintiff

    Lonnie F. Bryan, Esq., Office of the United States Attorney, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, on behalf of Defendant

_____

SUSAN RICHARD NELSON, United States Magistrate Judge

    Pursuant to 42 U.S.C. § 405(g), Plaintiff Dontea Britton seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), who denied Plaintiff's application for supplemental security income (SSI).  Plaintiff and the Commissioner have filed cross-motions for summary judgment, which have been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.  For the reasons set forth below, this Court recommends that Plaintiff's motion be denied and the Commissioner's motion be granted.

## I.      BACKGROUND

### A.      Procedural History

    Plaintiff protectively filed his application for SSI on December 19, 2003, alleging an onset of disability date of December 31, 2002.  (Admin. R. at 27.)  The application was denied

initially and on reconsideration.  (Id.)  Plaintiff then requested a hearing before an

Administrative Law Judge (ALJ), which occurred on July 20, 2006.  (Id.)  Plaintiff, his case

manager, and a vocational expert testified.  (Id.)  The ALJ issued an unfavorable decision on

September 27, 2006, concluding that Plaintiff was not disabled and therefore not entitled to SSI.

(Id. at 24, 27.)  Plaintiff sought review of the decision by the Appeals Council.  On February 28,

2007, the Appeals Council denied the request for review.  (Id. at 16.)  The ALJ's decision

therefore became the final decision of the Commissioner.  See 42 U.S.C. § 405(g); Browning v.

Sullivan, 958 F.2d 817, 822 (8th Cir. 1992).

On April 16, 2007, Plaintiff's attorney, Patrick Toomey, withdrew from representation.

(Admin. R. at 13.)  On May 14, 2007, Gary Hopkins wrote to the Appeals Council, stating that

he represented Plaintiff and requesting additional time to seek review in federal court.  (Id.)  The

Appeals Council granted the additional time to file a civil action.  (Id. at 12.)  Two months later,

the Appeals Council inexplicably sent a letter to Plaintiff granting him "more time before we act

on your case."  (Id. at 10.)  This letter apparently was sent in error, as Plaintiff had not requested

additional time in the administrative proceeding but rather to file a civil action in federal court.

The Appeals Council acknowledged the error in a subsequent letter dated November 9, 2007.

(Id. at 6.)

In any event, Mr. Hopkins sent a letter to the Appeals Council on August 6, 2007, and

included additional medical records from Dr. Duane Bartels and Dr. Lawrence Peterson.  (Id. at

8-9.)  The Appeals Council construed this submission as a request to reopen the decision, which

it denied.  (Id. at 6.)

Plaintiff filed the instant action in federal court on December 3, 2007, and his motion for

summary judgment on April 3, 2008.  Defendant filed his motion for summary judgment on May 20, 2008.

### B.     Medical Evidence of Record

Plaintiff's first application for SSI benefits was granted in 1994.  (Id. at 8.)  The record before the Court does not indicate what his disabilities were.  On December 1, 1995, Plaintiff was involved in a car accident and suffered a severe skull fracture, broken facial bones, a punctured lung, a collapsed lung, back injuries, and a fractured pelvis.  (Id. at 240-41.)  Plaintiff continued to receive SSI benefits until July 2002, when the Social Security Administration determined that he was no longer disabled because his health had improved.  (Id. at 8.)

On July 2, 2002, consultative examiner Dr. Donald Wiger examined Plaintiff.  (Id. at 202.)  Plaintiff told Dr. Wiger that he could not work because of the injuries he had sustained in the car accident.  (Id.)  Plaintiff said he suffered from back problems and a tender spine and muscles, but he was not receiving any treatment for those conditions.  (Id.)  Plaintiff also said he was not receiving treatment for any mental impairments.  (Id. at 203.)  Dr. Wiger noted that Plaintiff spent his days playing video games, watching television, talking on the phone, and spending time with friends.  (Id.)  Plaintiff's activities also included cooking, dressing himself, bathing and grooming himself, taking out the garbage, washing dishes, vacuuming, playing basketball, walking, and browsing the internet.  (Id.)  Plaintiff reported to Dr. Wiger that he smoked marijuana every day and occasionally used cocaine and alcohol.  (Id. at 204.)  After performing a mental status examination and administering several psychological tests, Dr. Wiger diagnosed Plaintiff with depressive disorder, NOS.  (Id. at 206.)  Dr. Wiger concluded that Plaintiff was able to understand directions, carry out tasks with persistence and pace, respond

appropriately to coworkers and supervisors, and handle the mental stressors of a job.  (Id. at 207.)

On November 24, 2003, Plaintiff saw Dr. Thomas Blum to obtain a referral to the Courage Center.  (Id. at 214.)  On February 13, 2004, Plaintiff brought several disability forms for Dr. Blum to complete, but Dr. Blum declined to assess Plaintiff's physical and mental limitations until Plaintiff was evaluated at the Courage Center.  (Id. at 222, 311.)  He noted that until Plaintiff was evaluated, the existence and extent of any mental illness, learning disability, or chemical dependency was unknown.  (Id. at 311.)  Dr. Blum did treat Plaintiff for shoulder and back pain resulting from a fall on some ice.  (Id. at 222.)

Plaintiff met with therapist Jennifer Vlach at Pyramid Counseling ("Pyramid") on November 20, 2003, for an intake evaluation.  (Id. at 235.)  Although Plaintiff did not indicate he was depressed or anxious, Ms. Vlach thought that he expressed symptoms of depression such as low self-esteem, irritability, and hopelessness.  (Id.)  Ms. Vlach diagnosed Plaintiff with dysthymia, major depression, and substance abuse.  (Id. at 237.)  Plaintiff spoke with counselors at Pyramid over the telephone a few times over the next several months.  (Id. at 225-234.)  He often reported feeling stressed and depressed about his living situation and asked for assistance with finding housing.  (Id.)  At times, Plaintiff reported feeling suicidal but generally had no intent to harm himself.  (Id.)

On March 11, 2004, Plaintiff was treated by Dr. Mohammad Rahman for back and neck pain.  (Id. at 220.)  Plaintiff described his pain as generally intermittent, but worse as of late.  (Id.)  Plaintiff also reported feeling depressed and said he had not been taking his medication.  (Id. at 221.)  Dr. Rahman noted that Plaintiff's neck and back were moderately tender but that his

neck joint movements were smooth and he had only mild weakness in one extremity. (Id.) Dr. Rahman prescribed naproxen and Darvocet for the pain and refilled Plaintiff's prescription for Lexapro and Seroquel. (Id.) That same day, Dr. Rahman completed a medical opinion form, noting that Plaintiff suffered from a mental impairment caused by traumatic brain injury, depression, and weakness in his left upper extremity. (Id. at 310.) Dr. Rahman remarked that Plaintiff would not be able to perform any employment in the foreseeable future. (Id.)

Plaintiff returned to Dr. Rahman on April 8, 2004, for treatment of a painful lump in his buttocks and shoulder pain. (Id. at 218.) Dr. Rahman noted Plaintiff's history of "severe depression and chronic back and shoulder pain." (Id.) Plaintiff described the shoulder pain as constant, and moderate to severe in intensity. (Id.) Dr. Rahman remarked that Plaintiff had marked difficulty moving his shoulder, and an examination of the shoulder revealed marked tenderness, no swelling or redness, and some pain. (Id. at 219.)

Plaintiff met with psychologist Jean Rafferty on June 3, 2004, for a consultative examination. (Id. at 239.) Plaintiff told Dr. Rafferty about his unstable family life and living situation, his frequent drug use, and his criminal record involving arrests for possession of marijuana, possession of drug paraphernalia, driving without a valid license, driving without proof of insurance, and theft. (Id. at 240-41.) During the examination, Plaintiff was fully oriented with normal speech, cooperative, and polite. (Id. at 242.) Plaintiff's memory and attention were good or average, and his insight, judgment, and abstract reasoning were fair. (Id.) Plaintiff scored a full scale IQ of 88, which placed him in the low average range of intellectual functioning. (Id. at 243.) Dr. Rafferty thought that Plaintiff's depression and moodiness could be residual effects of his brain injury, but she did not find his cognitive functioning to be

5

significantly impaired.  (Id. at 243-44.)  Dr. Rafferty also noted that Plaintiff did not have any

work skills and that his motivation to work might be compromised by his marijuana use.  (Id. at

244.)  Dr. Rafferty summarized her medical opinion as follows.

> Dontea's concentration skills and short-term memory skills were compromised
> during my time with him.  He didn't have any difficulty understanding
> instructions, however.  Carrying out tasks with reasonable persistence and pace
> would be dependent on tasks given him that are commensurate with his
> intellectual functioning.  He appears able to understand simple instructions.
> Appropriate responsiveness with co-workers and supervisors might be possible,
> although I believe Dontea would need a job coach and a caring supervisor to take
> him under his wing and teach him some job skills.  Tolerating stress in a
> workplace would be possible if Dontea sets his mind to responsible employment
> and a good work ethic, as well as having tasks to do that are commensurate with
> his abilities.

(Id.)

On May 26, 2004, Plaintiff presented at the Monticello-Big Lake Hospital Emergency

Department for treatment related to a cyst on his buttocks.  (Id. at 250.)  He reported that he had

no pain in his back, chest, or extremities.  (Id.)  Plaintiff returned to the emergency department

on June 29, 2004 for treatment of pain and swelling of multiple abscesses on his buttocks.  (Id. at

247.)  He denied feeling any back and neck pain, and an examination of his back was normal.

(Id.)

Medical consultant Dr. Dan Larson reviewed Plaintiff's medical records and assessed his

mental residual functional capacity (RFC) on July 1, 2004.  (Id. at 279.)  He diagnosed a mood

disorder and chemical abuse.  (Id.)  Dr. Larson opined that Plaintiff had the ability to concentrate

on, understand, and remember routine, repetitive instructions; and that Plaintiff could perform

routine tasks with adequate persistence and pace, briefly and infrequently interact with co-

workers, function adequately in a customary work setting, cope with ordinary levels of

supervision, and tolerate the routine stressors of a work setting.  (Id.)

In July 2004, medical consultant Dr. Richard Hamersma opined that Plaintiff functioned at the low average range of intellectual functional and that his concentration and memory were adequate.  (Id. at 264.)  Dr. Hamersma concluded that Plaintiff had the ability to do simple tasks on a sustained basis.  (Id.)

In September 2004, medical consultant Dr. Gregory Salmi completed an assessment form regarding Plaintiff's physical abilities.  (Id. at 267.)  He found that Plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds, stand or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, and perform limited pushing and pulling with his upper extremities.  (Id.)

Plaintiff was brought to the Buffalo Hospital from the Wright County Jail on September 18, 2004, for treatment of pain and swelling of boils on his buttocks.  (Id. at 296.)  He had no other complaints.  (Id.)

Plaintiff was assessed by Dr. Boris Kholomyansky at the Range Mental Health Center on December 7, 2004.  (Id. at 322.)  Plaintiff complained of depression, sleeping problems, irritability, and anger.  (Id.)  Plaintiff told Dr. Kholomyansky that he had attempted suicide at least three to four times in his life.  (Id. at 323.)  Dr. Kholomyansky observed that Plaintiff was able to answer questions, had sequential thought processes, was alert and oriented, and displayed partial insight and judgment.  (Id.)  Dr. Kholomyansky diagnosed Plaintiff with a major depressive disorder and polysubstance dependence.  (Id.)

Plaintiff began treating with therapist Shawna Benson in January 2005.  (Id. at 319.)  Ms. Benson noted a variable mood and moderate depression.  (Id.)  She thought that Plaintiff

struggled with immaturity, impulsivity, and inappropriate joking.  (Id.)  Dr. Craig Stevens signed

Ms. Benson's treatment note.  (Id.)  On June 1, 2005, nurse practitioner Pamela Jarvis wrote that

Plaintiff lacked concentration and focus, but that his symptoms had improved in response to

treatment.  (Id. at 318.)  Ms. Jarvis noted two months later in August 2005 that Plaintiff suffered

from major, recurrent depression, but that he would likely be able to begin working in October

2005.  (Id. at 307.)  In January 2006, Ms. Benson opined that Plaintiff had major, recurrent

depression, and that he would not be able to perform any employment in the foreseeable future.

(Id. at 303.)  She noted that Plaintiff should be reassessed in six months.  (Id.)  No treatment

notes accompany this opinion.

Psychological intern June Meyerhoff wrote two progress notes in April and May of 2006.

 (Id.)  She noted that Plaintiff's mood was moderately depressed.  (Id.)  Plaintiff told Ms.

Meyerhoff that he was not following through with treatment plans to improve his health and care

for himself.  (Id.)  He had discontinued his medications because he could not afford the co-pay

amount.  (Id.)  In addition, his case manager had ceased providing services to Plaintiff because

of his poor follow-though.  (Id.)  Plaintiff said he did not want to enter treatment because he

wanted "to get 'wasted' on his birthday."  (Id.)  On May 9, 2006, Ms. Meyerhoff completed a

Medical Assessment of Ability to Do Work-Related Activities (Mental) form.  (Id. at 312.)  She

remarked that Plaintiff's abilities to follow work rules, relate to co-workers, and understand and

comply with simple job instructions were fair; and that his abilities to deal with the public, use

judgment, interact with supervisors, deal with work stresses, function independently, understand

and carry out detailed or complex job instructions, demonstrate reliability, and maintain attention

and concentration were poor or nonexistent.  (Id. at 312-14.)  Ms. Meyerhoff observed that

Plaintiff was immature, had poor follow-through, and was easily distracted.  (Id. at 313.)   She

believed that the mental limitations were caused by Plaintiff's brain injury, depression, and

substance abuse.  (Id.)  Ms. Meyerhoff's supervisor, Dr. John Selden, also signed the form.  (Id.

at 314.)

On August 24, 2006, Plaintiff's counsel submitted additional records from November

2004 through June 2006 for the ALJ's consideration.  (Id. at 324.)  The records contain

information about several temporary complaints: intoxication, jaw pain, injuries from a bicycle

crash, a dislocated shoulder incurred while wrestling with a friend, and buttock abscesses and

pain.  (Id. at 325, 327, 330, 334, 363, 370.)  The evidence also includes information about a

suicide note Plaintiff wrote in November 2005.  (Id. at 339.)  As a result of the note, Plaintiff was

placed on a seventy-two hour hold, during which time he was seen by Dr. Kholomyansky.  (Id. at

342.)  Dr. Kholomyansky remarked that Plaintiff had been diagnosed with bipolar affective

disorder and schizophrenia in the past.  (Id.)  Dr. Kholomyansky also noted that Plaintiff had no

present suicidal ideation and appeared to have borderline intelligence.  (Id. at 342A.)  Dr.

Kholomyansky measured Plaintiff's IQ as 88 and thought that Plaintiff would be capable of

obtaining his GED.  (Id. at 343.)

## C.      Administrative Hearing Testimony

At the administrative hearing, Plaintiff testified that he could not work because of "a

traumatic brain injury and every single muscle and bone in my body hurts."  (Id. at 395.)  He

said he had trouble maintaining concentration and was forgetful.  (Id.)  He testified that he had

stopped using drugs about a month before the hearing, in part because using marijuana made him

feel worthless and lazy.  (Id. at 396.)  In his free time, Plaintiff watched television, played video

games, went to movies, bowled, and walked in the park.  (Id.)  He slept from three or four

o'clock in the morning until three or four o'clock the following afternoon.  (Id. at 399.)

Plaintiff's case manager, Marcy Stewart, also testified.  She stated that Plaintiff's ability

to work was affected primarily by his sleeping patterns, lack of concentration, lack of

professionalism, and inability to create and respect personal boundaries.  (Id. at 405-06.)

Vocational expert Warren Haagenson testified that Plaintiff had no past relevant work to

consider.  (Id. at 407.)  The ALJ then posed a hypothetical question containing the limitations

found by Ms. Meyerhoff, to which Mr. Haagenson responded that such a person could not

perform any competitive work.  (Id. at 408.)  The ALJ then formulated a second hypothetical

question based on the RFC of Dr. Larson, and Mr. Haagenson replied that such a person would

be able to perform unskilled work such as a motel cleaner, other cleaner, or hand packager.  (Id.

at 408-09.)  Such jobs exist in significant numbers in the national economy.  (Id. at 409.)

### D.     The ALJ's Decision

The ALJ issued an unfavorable decision on September 27, 2006, concluding that Plaintiff

was not disabled since December 19, 2003, the date on which Plaintiff filed his application for

SSI.  (Id. at 24, 27.)  In finding Plaintiff not disabled, the ALJ employed the required five-step

sequential evaluation, considering: (1) whether Plaintiff was engaged in substantial gainful

activity; (2) whether Plaintiff had a severe impairment; (3) whether Plaintiff's impairment met or

equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether Plaintiff

was capable of returning to past work; and (5) whether Plaintiff could do other work existing in

significant numbers in the regional or national economy.  See 20 C.F.R. § 416.920(a)(4).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity

since December 31, 2002. (Admin. R. at 29.)  The ALJ found at step two that Plaintiff's

impairments consisted of disorders of the shoulders, back, and neck; traumatic brain injury;

depression; and polysubstance dependence.  (Id.)  At step three, the ALJ concluded that

Plaintiff's impairments did not meet or medically equal a listed impairment.  (Id.)  With respect

to Plaintiff's physical ailments, the ALJ noted that Plaintiff had not demonstrated any

neurological compromise on examination, which was a requirement of the relevant listing.  (Id.

at 30.)  As for Plaintiff's mental condition, the ALJ noted that Plaintiff had no area of markedly

restricted functioning, and the applicable listing required at least two such areas.  (Id.)  In

addition, no medical source had made findings consistent with any listing.  (Id.)

> The ALJ then proceeded to step four where he determined that Plaintiff had the RFC
>
> to lift 50 pounds occasionally and 25 pounds frequently and can stand and/or
> walk for 6 hours and sit for 6 hours in an 8 hour workday with no vigorous
> pushing or pulling with the upper extremities and no more than occasional
> reaching overhead.  In addition, claimant can concentrate on, understand and
> remember routine, repetitive instructions and carry out routine, repetitive tasks.
> Claimant is able to interact and get along with coworkers for brief, superficial and
> infrequent contact and is able to get along with the public on a brief and
> superficial basis.  Claimant can function within the ordinary levels of supervision
> found in most customary work settings and can tolerate the routine stressors of a
> routine, repetitive work setting.

(Id.)  In assessing Plaintiff's RFC, the ALJ found the medical evidence inconsistent with

Plaintiff's claims of physical and mental disability.  (Id. at 30-32.)  The ALJ gave particular

weight to the opinion of non-examining physician Dr. Salmi in assessing Plaintiff's physical

condition.  (Id. at 34.)  In assessing Plaintiff's mental condition, the ALJ gave particular weight

to the findings of non-examining psychiatrist Dr. Larson and consultative examiners Dr. Wiger

and Dr. Rafferty.  (Id. at 32, 34.)  The ALJ declined to give significant weight to Ms.

Meyerhoff's opinion.  (Id. at 34-34A.)  The ALJ discounted the credibility of Plaintiff's

subjective complaints based on the objective medical record, work history, medication regimen, activities of daily living, and Plaintiff's failure to follow recommended courses of treatment. (Id. at 30-34.)

As Plaintiff had not worked for many years and had no past relevant work, the ALJ proceeded to step five to determine whether Plaintiff could perform jobs in the national economy. (Id. at 35.) Based on the testimony of the vocational expert in response to the second hypothetical question, the ALJ determined that Plaintiff could work as a motel cleaner, other cleaner, or hand packager. (Id.)

## II.  STANDARD OF REVIEW

Congress has prescribed the standards by which Social Security disability benefits may be awarded. "The Social Security program provides benefits to people who are aged, blind, or who suffer from a physical or mental disability." Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." Id. § 1382c(a)(3)(B).

12

### A.      Administrative Review

If a claimant's initial application for benefits is denied, he or she may request

reconsideration of the decision.  20 C.F.R. § 416.1409(a).  A claimant who is dissatisfied with

the reconsidered decision may obtain administrative review by an ALJ.  Id. § 416.1429.  If the

claimant is dissatisfied with the ALJ's decision, he or she may request review by the Appeals

Council, although review is not automatic.  Id. § 416.1467.  The decision of the Appeals

Council, or of the ALJ if the request for review is denied, is final and binding upon the claimant

unless the matter is appealed to a federal district court within sixty days after notice of the

Appeals Council's action.  42 U.S.C. §§ 405(g); 20 C.F.R. § 416.1481.

### B.      Judicial Review

 Judicial review of the Commissioner's decision is limited to a determination of whether

the decision is supported by substantial evidence in the record as a whole.  Hutsell v. Sullivan,

892 F.2d 747, 748-49 (8th Cir. 1989).  Substantial evidence is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402

U.S. 389, 401 (1971).  The review is "more than a mere search of the record for evidence

supporting the [Commissioner's] finding."  Brand v. Sec'y of Dep't of Health, Educ. & Welfare,

623 F.2d 523, 527 (8th Cir. 1980).  Rather, "'the substantiality of evidence must take into

account whatever in the record fairly detracts from its weight.'"  Id. (quoting Universal Camera

Corp. v. NLRB, 340 U.S. 474, 488 (1951)).

The reviewing court must review the record and consider:

1.      The credibility findings made by the ALJ.
2.      The plaintiff's vocational factors.
3.      The medical evidence from treating and consulting
        physicians.

13

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairments.

Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989) (citing Brand, 623 F.2d at 527).  A court may not reverse the Commissioner's decision simply because substantial evidence would support an opposite conclusion, Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984), and in reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact, Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).  Instead, the court must consider "the weight of the evidence in the record and apply a balancing test to evidence which is contradictory."  Gavin v. Heckler, 811 F.2d 1195, 1199 (8th Cir. 1987).  If it is possible to reach two inconsistent positions from the evidence, and one of those positions represents the Commissioner's decision, the court must affirm that decision.  Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

## III.   DISCUSSION

Plaintiff makes several arguments in support of his motion for summary judgment.  He contends that the ALJ erred by crediting the opinions of non-treating doctors over those of his doctors and other medical providers.  He also claims that the ALJ relied on an incorrect hypothetical question, and that the ALJ's credibility assessment was incorrect.  Finally, Plaintiff challenges the Appeals Council's decision not to reopen his case.

## A.      Evidence from Treating and Non-Treating Medical Sources

Plaintiff contends that the ALJ disregarded opinions from his treating medical providers and wrongly credited the opinions of non-treating and non-examining physicians.  The amount of weight accorded to a medical opinion is prescribed by 20 C.F.R. § 416.927.  A treating physician's opinion is generally given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the medical record.  20 C.F.R. § 416.927(d)(2).  Factors to be considered in attributing the appropriate weight to a medical source's opinion include whether the opinion is consistent with the medical record; whether the source has examined the claimant; whether the source has provided medical support for the opinion; whether the source is a specialist; and the nature, length, and extent of the treatment relationship.  Id. § 416.927(d)(1)-(5).  Opinions from non-examining sources are considered according to the same criteria.  Id. § 416.927(f).  Whether a claimant is "disabled" is a determination ultimately reserved for the Commissioner, and thus, a conclusion of disability by a medical source is of no special significance.  Id. § 416.927(e)(1), (3).  Similarly, a medical source's opinion concerning the nature and severity of an impairment is of little significance because these determinations are also reserved for the Commissioner.  Id. § 416.927(e)(2), (3).

It is well-established in the case law of this circuit that an ALJ need not give controlling weight to a treating physician's opinion that is inconsistent with other, substantial evidence in the record.  E.g., Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001).  Similarly, an ALJ may disregard a medical source opinion that "consist[s] of nothing more than vague, conclusory statements."  Piepgras v. Chater, 76 F.3d 233, 236 (8th Cir. 1996).

Plaintiff contends that the ALJ wrongly rejected or disregarded opinions from Dr. Blum, Dr. Rahman, Ms. Benson, Ms. Jarvis, Ms. Meyerhoff, and Dr. Stevens.  In an opinion dated February 13, 2004, Dr. Blum noted that Plaintiff had suffered a brain injury years earlier, but he explained that the extent of Plaintiff's residual physical or mental disabilities could not be determined until Plaintiff was evaluated by the Courage Center.  This opinion provides no support to Plaintiff.  Indeed, this was not the first time Dr. Blum refused to quantify Plaintiff's alleged impairments.  A few months earlier, in November 2003, Dr. Blum declined to fill out several disability forms Plaintiff had provided because Plaintiff had not yet been evaluated at the Courage Center.  The ALJ did not err in disregarding Dr. Blum's "opinion" because there was no "opinion" to regard.

In March 2004, Dr. Rahman opined that Plaintiff would not be able to perform any employment in the foreseeable future due to a mental impairment, depression, and upper left extremity weakness.  The ALJ was entitled to reject this opinion for numerous reasons.  First, the opinion was inconsistent with medical evidence.  A contemporaneous record from Dr. Rahman indicated that Plaintiff experienced only mild weakness in his upper left extremity.  Later medical records are conspicuously absent of any treatment for or reports of upper left extremity weakness.  As to Plaintiff's mental impairments, there are no clinical findings from Dr. Rahman regarding Plaintiff's mental condition, and records from Pyramid counselors, Dr. Wiger, and Dr. Rafferty contravene Dr. Rahman's opinion that Plaintiff's mental condition and depression were so severe as to preclude employment.  Second, Dr. Rahman failed to provide any medical support for his opinion.  The opinion was rendered on a one-page form consisting of checked boxes, and there are no references to any medical records.  Third, insofar as Dr. Rahman's

16

opinion answered the ultimate question of whether Plaintiff was disabled, the ALJ was not

obliged to give any special significance to it.

Treatment notes from Ms. Benson, Dr. Stevens, and Ms. Jarvis indicate that Plaintiff

suffered from a variable mood and moderate depression.  These providers described Plaintiff as

struggling with immaturity, impulsivity, and inappropriate joking, and as lacking in

concentration and focus.  It was not until January 2006 that Ms. Benson opined that Plaintiff

would not be able to perform any employment in the foreseeable future; however, she also

indicated that Plaintiff should be reassessed in six months.  The ALJ properly accorded Ms.

Benson's conclusory opinion no weight for several reasons.  First, the opinion is inconsistent

with Ms. Benson's own treatment records, as well as those from Ms. Jarvis.  Notably, there are

no treatment records contemporaneous to the opinion.  Ms. Benson last saw Plaintiff in

November 2005, at which time she noted that Plaintiff was feeling frustrated and angry at being

rejected by his girlfriend, but she noted no particular symptoms of major depression or deficient

concentration of a severity that would preclude employment.  The next treatment note

immediately following Ms. Benson's opinion was written by a nurse in March 2006, and there is

no mention of depression at all.  Second, Ms. Benson's opinion is vague and conclusory, as it

does not refer to any medical records, clinical findings, or diagnostic testing.  Finally, because

Ms. Benson's opinion related to the ultimate question of disability, the ALJ properly disregarded

it.

Ms. Meyerhoff, a psychological intern, opined on May 9, 2006 that Plaintiff had poor to

no abilities to deal with the public, use judgment, interact with supervisors, deal with work

stresses, function independently, understand and carry out detailed or complex job instructions,

be reliable, and maintain attention and concentration.  Her supervisor, Dr. Selden, signed off on the opinion.  This opinion was due little weight for several reasons.  First, Ms. Meyerhoff is not an acceptable medical source because she is not a licensed or certified psychologist.  See 20 C.F.R. § 416.913(a)(2).  Although Dr. Selden signed the bottom of the form, there is no indication he had ever treated Plaintiff.  Second, Ms. Meyerhoff's opinion is not supported by any clinical or laboratory diagnostic techniques.  Lastly, Ms. Meyerhoff's opinion is inconsistent with other substantial evidence.  For example, in Ms. Meyerhoff's own progress notes, she wrote that Plaintiff was only moderately depressed and that Plaintiff had not been complying with treatment plans.  Her treatment notes do not indicate that Plaintiff had little or no ability to deal with the public, interact with supervisors, deal with work stresses, function independently, understand or carry out job instructions, be reliable, or maintain attention and concentration.  At worst, Ms. Meyerhoff described Plaintiff as impulsive, immature, and tending to make excuses and blame others for his poor choices.

    In general, Plaintiff faults the ALJ for not discussing each and every piece of evidence from his medical providers.  However, an ALJ is not required "to discuss every piece of evidence presented, but must develop the record fully and fairly."  Miller v. Shalala, 8 F.3d 611, 613 (8th Cir. 1993).  The ALJ here took specific note of records indicating upper extremity weakness and pain, Plaintiff's traumatic brain injury and residual impairments, and Plaintiff's history of low self-esteem, depression, and impulsivity.  The ALJ rejected these records because they were inconsistent with other substantial evidence, were not supported by diagnostic testing, and were undermined by Plaintiff's failure to follow through with treatment.  The ALJ was not required to mention each medical source by name, as long as he explained his reasons for

rejecting the content of that source's opinion, which the ALJ did.

In lieu of crediting the opinions of Plaintiff's medical providers, the ALJ gave particular weight to the opinions of Dr. Wiger and Dr. Rafferty, both of whom examined Plaintiff in a consultative capacity, and to the opinions of Dr. Larson and Dr. Salmi, who functioned as non-examining consultants.  The ALJ did not err in accepting the opinions of these medical sources. First and foremost, their opinions are consistent with the objective medical evidence.  Dr. Wiger, Dr. Rafferty, and Dr. Larson acknowledged that Plaintiff suffered from depression and concentration deficits, but the medical records simply did not indicate that Plaintiff was significantly limited in his ability to understand directions, carry out mental tasks, respond to coworkers and supervisors, and tolerate the routine stressors of a workplace.  Although Dr. Rafferty thought that Plaintiff would need a job coach and an understanding supervisor, this was not due to his depression or mental condition, but due to his lack of job skills.  As for Plaintiff's physical condition, no medical record supports an opinion that Plaintiff is physically unable to work, and Dr. Salmi's opinion is entirely consistent with the medical record concerning physical limitations.

Not only are Dr. Wiger's and Dr. Rafferty's opinions consistent with the medical record, but they both conducted numerous diagnostic tests before arriving at their respective opinions. Dr. Wiger tested Plaintiff's concentration, abstract capacity, judgment, and personality, and administered a Weschler Adult Intelligence Scale test.  Dr. Rafferty also administered the Weschler Adult Intelligence Scale test and tested Plaintiff's memory, concentration, attention span, arithmetic and digit span abilities, insight, judgment, abstract reasoning, and concrete reasoning.  The opinions of Dr. Wiger, Dr. Rafferty, and Dr. Larson are well-supported by

accepted clinical and laboratory diagnostic techniques.  Notably, Plaintiff's own providers never administered such a battery of tests.

In sum, it is worth noting that although Dr. Wiger and Dr. Rafferty did not treat Plaintiff and only examined him once each, their examinations and assessments are far more comprehensive than those of his treating sources.  Their opinions are also more consistent with the objective medical evidence.  Accordingly, the ALJ's decision to credit the opinions of non-treating sources over Plaintiff's medical providers is supported by substantial evidence in the record as a whole.

**B.    Assessment of Plaintiff's Credibility**

In the Eighth Circuit, credibility determinations are governed by the factors enunciated in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984).  In assessing subjective complaints, an ALJ must consider: "(1) the claimant's daily activities; (2) the duration, frequency[,] and intensity of pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions."  Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996) (citing Polaski, 739 F.2d at 1322).  Other relevant factors are the claimant's work history and the objective medical evidence.  Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999) (citing Polaski, 739 F.2d at 1322).  "While these considerations must be taken into account, the ALJ's decision need not include a discussion of how every Polaski factor relates to the claimant's credibility." Casey v. Astrue, 503 F.3d 687, 695 (8th Cir. 2007) (citing Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004)).  "The ALJ may discount subjective complaints of pain if they are inconsistent with the evidence as a whole."  Id. (citing Polaski, 739 F.2d at 1322).

In the present case, the ALJ discounted the credibility of Plaintiff's subjective complaints

based on the objective medical record, work history, medication regimen, activities of daily living, and failure to follow recommended courses of treatment.  The Court finds that the ALJ did not err in these respects.

At the administrative hearing, Plaintiff testified that he could not work because of his brain injury, deficient concentration, and pain throughout his body.  No objective medical record supports his claim of such widespread and debilitating pain.  Indeed, in numerous instances, Plaintiff denied experiencing any pain at all.  Most of the pain evidenced in the medical record was caused by cysts and abscesses on Plaintiff's buttocks.  Physical examinations generally revealed a full range of motion and only occasional tenderness.  As for Plaintiff's subjective complaint that he could not concentrate, there is substantial, objective medical evidence from Dr. Wiger and Dr. Rafferty that Plaintiff's concentration was limited to only a moderate degree.  In addition, Dr. Kholomyansky remarked that Plaintiff could answer questions appropriately, had sequential thought processes, and was alert and oriented.  Dr. Kholomyansky also thought Plaintiff capable of obtaining his GED.  Ms. Jarvis noted in June 2005 that Plaintiff's concentration skills were improving.  Ms. Meyerhoff's opinion that Plaintiff had no ability to concentrate is inconsistent with the objective medical evidence and does not bolster Plaintiff's credibility.

The nature and extent of Plaintiff's daily activities were also inconsistent with his claims of debilitating pain, depression, and inability to concentrate.  As the ALJ noted, Plaintiff cooked, bathed, groomed himself, took out the garbage, washed dishes, vacuumed, spent time with friends, played video games, watched television, walked, played basketball, and generally led an active lifestyle.  The amount and frequency of Plaintiff's daily activities support the ALJ's

determination that his pain and other subjective complaints were not as severe as claimed.  See

Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); Lawrence v. Chater, 107 F.3d 674, 676 (8th

Cir. 1997).

The ALJ also discounted Plaintiff's credibility because his claims of debilitating pain

were not consistent with his course of treatment and medication regimen.  The ALJ noted that

Plaintiff had not participated in any physical therapy for back, neck, or shoulder pain, and was

not taking any pain medication.  These facts weigh against the claimed severity of Plaintiff's

pain.  See Richmond v. Shalala, 23 F.3d 1441, 1443-44 (8th Cir. 1994) ("[T]he lack of strong

pain medication is inconsistent with subjective complaints of disabling pain."); Robinson v.

Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) (claimant's failure to seek more aggressive treatment

contradicted his claim of disabling pain).

Finally, the ALJ considered Plaintiff's work history in assessing his credibility.  The ALJ

noted that Plaintiff had not held a job since he was sixteen years old, which indicated that factors

other than Plaintiff's mental and physical condition influenced his lack of employment.  The ALJ

noted that Plaintiff had been referred to the Courage Center for a vocational evaluation, but

Plaintiff failed to follow through with the referral.  "A lack of work history may indicate a lack

of motivation to work rather than a lack of ability."  Pearsall v. Massanari, 274 F.3d 1211, 1218

(8th Cir. 2001) (citing Woolf v. Shalala, 3 F.3d 1210, 1214 (8th Cir. 1993)).  In the present case,

the record strongly supports a finding that Plaintiff's nonexistent work history is due to a lack of

motivation rather than ability.  Therefore, the ALJ did not err in discounting Plaintiff's

credibility in this respect.

## C.       The Hypothetical Question Posed to the Vocational Expert

Plaintiff challenges the ALJ's hypothetical question on several grounds.  He asserts that the ALJ erroneously based psychological limitations on the report of Dr. Larson, who Plaintiff claims is an orthopedic surgeon, not a psychologist or psychiatrist.  Plaintiff also contends that the ALJ omitted key facts from the question such as diagnoses of major depression, bipolar disorder, low IQ, and history of traumatic brain injury, and other facts such as his nonexistent work history and lack of job skills.

Plaintiff does not explain why he believes Dr. Larson is an orthopedic surgeon, and there is no evidence to support this position.  On the other hand, Defendant has demonstrated that Dr. Larson is a disability determination services (DDS) physician and a psychiatrist, and the Court therefore rejects Plaintiff's challenge to Dr. Larson's qualifications.

With respect to Plaintiff's contention that the ALJ omitted key facts from the second hypothetical question, Plaintiff fails to identify any credible, substantial record evidence for his claimed limitations resulting from major depression, bipolar disorder, and low IQ.  To the extent Plaintiff is basing these limitations on his subjective complaints, the ALJ properly discredited such complaints.  A hypothetical question must include only the limitations found credible by the ALJ and supported by the medical record.  Pertuis v. Apfel, 152 F.3d 1006, 1007 (8th Cir. 1998).  The limitations included in the second hypothetical question posed to Mr. Haagenson meet this criteria.

As for Plaintiff's claim that the ALJ should have included his nonexistent work history and lack of job skills in the hypothetical question, Plaintiff provides no legal support for this argument.  The purpose of a hypothetical question is to obtain testimony from a vocational

expert regarding whether a person with certain "physical and mental limitations <u>imposed by the</u> <u>claimant's medical impairment(s)</u> can meet the demands of" work.  20 C.F.R. § 416.960(b)(2) (emphasis added).  The ALJ concluded that Plaintiff's nonexistent work history and lack of job skills were due to factors other than medical impairments.  The ALJ therefore properly excluded this information from the hypothetical question.

### D.  New Evidence from Dr. Peterson and Dr. Bartels

Plaintiff submitted additional evidence to the Appeals Council on August 6, 2007, long after the Appeals Council denied Plaintiff's request for review on February 28, 2007.  Plaintiff now contends that the Appeals Council erred in failing to consider the new evidence.  In making this argument, however, Plaintiff fails to realize that a different standard applies when a claimant submits new evidence to the Appeals Council <u>after</u> it has denied review and the decision of the Commissioner has become final.  In that instance, the claimant must seek to reopen the decision pursuant to 20 C.F.R. § 416.1487.  Indeed, in Plaintiff's case, the Appeals Council treated Plaintiff's letter and submission of new evidence as a request to reopen his case under § 416.1487.

The Appeals Council's decision not to reopen Plaintiff's case is not reviewable by this Court.  Title 42 U.S.C. § 405(g) grants federal courts jurisdiction only to review final decisions of the Commissioner made after a hearing.  42 U.S.C. § 405(g).  "Courts generally lack jurisdiction to review the Commissioner's refusal to reopen the proceeding because a refusal to reopen the proceeding is not a 'final decision of the Commissioner . . . made after a hearing.'" <u>Efinchuk v. Astrue</u>, 480 F.3d 846, 848 (8th Cir. 2007) (citing 42 U.S.C. § 405(g); <u>Califano v.</u> <u>Sanders</u>, 430 U.S. 99, 107-08 (1977); <u>Boock v. Shalala</u>, 48 F.3d 348, 351 (8th Cir. 1995)).  There

are two exceptions to this rule.  A court has jurisdiction to review a refusal to reopen a claim for benefits when either (1) the claimant challenges the refusal to reopen on constitutional grounds, id. (citation omitted), or (2) a claim was actually reconsidered on the merits, resulting in a constructive reopening, Jelinek v. Heckler, 764 F.2d 507, 508 (8th Cir. 1985) (finding jurisdiction where the ALJ conducted a hearing and issued a decision on the merits contemporaneously with finding that reopening was not justified).  Neither of these exceptions is applicable here.  Plaintiff has asserted no constitutional challenge, and the Appeals Council did not reconsider Plaintiff's claims on the merits.  Merely reviewing additional medical records does not constitute a reopening.  Hillier v. Soc. Sec. Admin., 486 F.3d 359, 364 n.2 (8th Cir. 2007) (citations omitted).  In addition, the Appeals Council expressly stated that it was not reopening the decision, which further indicates there was no constructive reopening.  See Hardy v. Chater, 64 F.3d 405, 407-08 (8th Cir. 1995).  Consequently, this Court lacks jurisdiction to review the Appeals Council's decision not to reopen Plaintiff's case.

Plaintiff suggested in his reply memorandum that the case should be remanded to the Social Security Administration pursuant to sentence six of 42 U.S.C. § 405(g) for consideration of the new evidence.  Ordinarily, the Court does not consider arguments made for the first time in a reply memorandum, but the issue may be quickly resolved.

"Sentence-six remands may be ordered in only two situations: where the Secretary requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency."  Shalala v. Schaefer, 509 U.S. 292, 297 n.2 (1993).  "Material evidence is 'non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied, and there must be a reasonable

likelihood that it would have changed the [Commissioner's] determination.'" Krogmeier v.

Barnhart, 294 F.3d 1019, 1025 (8th Cir. 2002) (quoting Woolf, 3 F.3d at 1215).

The new evidence supplied by Plaintiff consists of a Mental Residual Functional

Capacity Assessment form completed by Dr. Peterson in August 2007 and a medical opinion

form completed by Dr. Bartels on July 13, 2007.  This evidence is not material for two reasons.

First, the vague and conclusory opinions of Dr. Peterson and Dr. Bartels deserve little to no

weight, and as such, there is little likelihood that they would have impacted the ALJ's decision.

The opinions are not supported with any medical records, diagnostic testing, or clinical

evaluations.  Indeed, there is no evidence that Dr. Bartels ever even examined Plaintiff.  The

opinions are also inconsistent with substantial evidence of record.  For example, there is no

medical support for Dr. Peterson's statement that Plaintiff suffers from delusions or

hallucinations, is incoherent, or has experienced four or more episodes of decompensation.

Second, the opinions do not relate to the time period for which benefits were denied.  Dr.

Peterson did not begin treating Plaintiff until May 2007, eight months after the ALJ rendered his

decision.  There is no indication that Dr. Bartels actually treated Plaintiff at all, as Dr. Bartels

failed to check the box on his opinion form denoting that he had prescribed a treatment plan for

Plaintiff.  Because the opinions do not concern the period of time considered by the ALJ, they

are not material.

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED** that:

1.      Plaintiff's Motion for Summary Judgment (Doc. No. 13) be **DENIED**; and

26

     2.      Defendant's Motion for Summary Judgment (Doc. No. 15) be **GRANTED**.


Dated: September 15, 2008

                          s/ Susan Richard Nelson
                          SUSAN RICHARD NELSON
                          United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by  **September 30, 2008**  , a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.